UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SANDRA COOKENMASTER,
MARK COOKENMASTER,

        Plaintiffs,

                                   Case Number 07-13947-BC

v.                                   Honorable Thomas L. Ludington

KMART CORP.,

        Defendant.
_____/

**ORDER DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE OR COMPEL AMENDMENT OF PLAINTIFFS' PRETRIAL DISCLOSURES, DIRECTING THE PARTIES TO EXCHANGE AND FILE AMENDED PRETRIAL DISCLOSURES, GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF LOST WAGES, GRANTING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ALLEGED GENDER DISCRIMINATION, DENYING AS MOOT IN PART AND GRANTING IN PART DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REQUESTED IN DISCOVERY THAT WAS NOT PRODUCED BY PLAINTIFFS, AND DENYING AS MOOT IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE TO EXCLUDE ALLEGATIONS NOT SUPPORTED BY RECORD EVIDENCE**

       The following five motions, filed by Defendant, are now before the Court: (1) motion to strike or compel amendment of Plaintiffs' pretrial disclosures, and (2) through (5) motions in limine to exclude evidence of (2) lost wages, (3) alleged gender discrimination, (4) evidence requested in discovery that was not produced by Plaintiffs, and (5) allegations not supported by record evidence. In lieu of a hearing, the Court discussed the motions with the parties at the final pretrial conference held on January 9, 2009.

**I. Background**

       Plaintiff Sandra Cookenmaster ("Plaintiff") was an employee at Kmart Store 4091, District 580, in Bay City, Michigan for approximately thirty-five years.  Defendant terminated Plaintiff's

employment on August 15, 2006, just a few months before Plaintiff would have been entitled to receive full retirement benefits.

From November 2005 until August 15, 2006, Plaintiff was on a leave of absence due to injuries she sustained in a car accident unrelated to her work duties.  On August 14, 2006, Plaintiff informed Defendant's human resources department that her doctor had informed her she could return to work with the restrictions that she engage in no heavy lifting and worked as a cashier.  Plaintiff also informed Defendant that she would need another surgery after returning to work, which she had scheduled for September 8, 2008.  Defendant advised Plaintiff to return to work on August 15, 2006, at one o'clock in the afternoon.

When Plaintiff arrived for work on August 15, 2006, Defendant told her that her employment had been terminated as part of a workforce reduction.  According to Defendant, it intended to offer Plaintiff an opportunity to reapply for part-time employment, but was unable to do so because Plaintiff left the meeting abruptly.

On October 7, 2008, the Court granted Defendant's motion for summary judgment on several of Plaintiffs Sandra and Mark Cookenmaster's claims, including claims of discrimination under the ADEA.  Subsequent to the Court's order, Plaintiff Sandra Cookenmaster maintains claims against Kmart for disability discrimination under the ADA and PWDCRA, and retaliation under the FMLA.  Plaintiff Mark Cookenmaster ("Plaintiff's husband") maintains a derivative claim for loss of consortium based on Plaintiff's PWDCRA claim.

Plaintiffs' claims survived Defendant's motion for summary judgment based on three main pieces of evidence.  First, Plaintiff advanced evidence to show that when Defendant's store manager rated Plaintiff pursuant to the workforce reduction, he based her rating on an incomplete annual

review, rather than a completed review as he did for all of the other employees that he rated. Second, Defendant's store manager could not explain why he rated Plaintiff's observed work performance lower than he had rated it in November 2005, when Plaintiff had not worked since November 2005.  Third, Plaintiff advanced evidence that of the four employees that Defendant terminated as part of the workforce reduction, she was the only employee that was disabled and on a leave of absence, and the only employee that Defendant did not encourage to reapply for part-time employment.

## II.  Defendant's Motion to Strike or Compel Amendment of Plaintiff's Pretrial Disclosures [Dkt. # 46]

In its motion dated September 16, 2008, Defendant asserts that Plaintiffs' pretrial disclosures, filed on August 22, 2008, are overbroad and vague.  At the pre-trial conference, the parties agreed that Plaintiffs would revise their exhibit and witness lists to narrow the exhibits and witnesses they "expect" to offer at trial.  In addition, both parties agreed to revise their witness lists to include estimates of the time they expect to utilize on direct examination of the witnesses.  The parties agreed that the revised disclosures would be provided by January 16, 2009.  Thus, Defendant's motion will be denied as moot.

## III.  Defendant's Motion In Limine to Exclude Evidence of Lost Wages [Dkt. # 47]

Defendant contends that Plaintiff should be precluded from introducing any evidence to support an award of back pay or front pay because Plaintiff has admitted that she is currently unemployed and has been unable to work since her car accident in November 2005, with the exception of a three-week period in August and September 2006.

With respect to back pay, the purpose of the award is to "place the aggrieved party in the position he or she would have been in but for the discrimination."  *Burton v. Ohio Adult Parole*

*Auth.*, 798 F.2d 164, 167 n.4 (6th Cir. 1986) (internal citation omitted).  In other words, a plaintiff is not entitled to back pay if the loss of wages was not due to the defendant's discrimination.  Here, Plaintiff testified at her deposition that she has been unable to work since her car accident:

Q:      Have you looked for a position elsewhere since you were terminated from Kmart?

A:      No.

Q:      And why have you not?

A:      Well, right now I don't have - I'm still in therapy.

Q:      Physical therapy?

A:      Physical therapy, yes.

Q:      Due to the . . . due to the automobile accident?

A:      Correct.

Q:      So you've been physically unable to work since, since when?

A:      Since the automobile accident.  Well, I was released to go back on checkouts for that – in August of . . . Wait.  I'm not sure when the date was.

Q:      I believe it was August of 2006 is when you testified that you went back with the idea that you were going to return to work.

A:      Right.

Q:      And then I think you said your idea was that you would only be able to work for a short period of time because you had some shoulder surgeries scheduled?

A:      Correct.

Q:      Okay.  And is it your testimony that other for that relatively short window that you've been unable to work the rest of the time since your automobile accident?

A:      I have been unable to work, yes.

Q:      Okay.  After – Did you ultimately have the shoulder surgery?

A:      I've had two shoulder surgeries on the right and one on the left.

Q:      Okay.  We'll get into your medical a little more later, but when were those shoulder surgeries?

A:      Oh . . . I can't remember exact dates.

Q:      Okay.  But the shoulder surgery was after August 2006 when you had attempted to return to Kmart; is that correct?

A:        Yes.

Q:        And you have . . . you have not physically been able to work since those shoulder surgeries with or without restrictions; is that right?

Mr. Skinner:        I'm not sure about the premise about whether she's been able to work, whether she . . . whether she could work with restrictions, without restrictions, and whatever, but . . .

A:        I'm not sure if I can work with restrictions or not.

Q:        Well, I think you said earlier you hadn't applied for any jobs because you feel like you haven't been able to work during that time. Is that correct?

A:        Right. And I just haven't . . . I don't . . . I . . . Yeah.

Pl.'s Dep. 94:22-96:22, Feb. 12, 2008 (ellipses in original). Given Plaintiff's testimony that she has been unable to work since her car accident, she is unable to recover back pay outside the period from August 15, 2006, through September 7, 2006, during which she alleges that she was physically able to work.

With respect to front pay, Plaintiff has not provided any evidence suggesting that she is, or will be, able to return to work. Indeed, at her deposition, Plaintiff was asked whether she had "any idea from her doctors or elsewhere" as to when she might be able to return to work, and she replied, "No." *Id.* 160:1-3. Moreover, Plaintiff has not made any attempt to seek alternate employment. *Id.* 94:22-24. Thus, Plaintiff is not entitled to an award of front pay. Accordingly, the Court will grant Defendant's motion to exclude evidence of lost wages in the form of both back and front pay, with the exception of the period from August 15, 2006, to September 7, 2006.

### IV. Defendant's Motion In Limine to Exclude Evidence of Alleged Gender Discrimination [Dkt. # 48]

Defendant seeks to exclude evidence concerning allegations that Defendant engaged in

gender discrimination.[1]  Defendant argues that the evidence should be excluded under Fed. R. Evid.

401 because it is not relevant; Plaintiff has not stated any claims of gender discrimination.

Defendant also argues that the evidence should be excluded under Fed. R. Evid. 402 and 403

because the evidence would confuse the jury as to the claims and facts at issue in this case.

Plaintiff maintains that the evidence is relevant because "opinions of employees on how they

---

[1]  Defendant points out that Plaintiff, in her deposition, mentioned gender discrimination:

Q:    Are there any other ways in which you believe you were discriminated against other than your age and disability?

A:    Sometimes just being a woman.

Pl.'s Dep. 53:10-15.  Defendant also points out that witness Sue Ann Meyers mentioned gender discrimination in her deposition:

Q:    Do you know anything about [Plaintiff Sandra Cookenmaster's] allegations of discrimination or ways in which you feel or she feels she was discriminated against?

A:    I either don't understand the question part or -- we were all discriminated against, as far as women were not as good as the men.

Q:    Okay.  So you feel like women were treated differently in some way?

A:    Somewhat they were, yes.

Q:    And in what way, in your view?

A:    Because the guys could do the lifting, the guys could do this.  So most of the management team were always more favorable to the men than they were the women.  And that's just general throughout all of them.

Q:    Is that something -- has that been your feeling throughout the years you worked at K-Mart?

A:    Yes, it's been my feeling throughout the years.

Q:    And as far as Miss Cookenmaster being terminated from K-Mart, are you -- is it your feeling that it had anything to do with her being a woman, or do you know?

A:    I'm not going to say yes or no to that one, because I don't feel that necessarily was a bearing to what I know about why she was let go.  She has never told me why they told her she was let go.

Meyers Dep. 19:11-20:9, Apr. 17, 2008.

have been treated go to the credibility of Plaintiff's testimony with regard to how she feels she has been treated."  Plaintiff argues that "[a]lthough 'gender' per se is not an ultimate issue in this case, the treatment of Kmart to their employees is and it is a larger issue which would include employees' feelings as to gender treatment."  Plaintiff suggests that a limiting instruction could be provided to the jury to indicate that this is not a gender discrimination case.

Evidence of gender discrimination is irrelevant to Plaintiff's claims based on disability discrimination and retaliation for exercising her rights under the FMLA.  Allegations that Defendant generally discriminated based on gender will only serve to confuse and prejudice the jury.  Accordingly, the Court will grant Defendant's motion.

## V.  Defendant's Motion In Limine to Exclude Evidence Requested in Discovery that was not Produced by Plaintiffs [Dkt. # 49]

Defendant's motion in limine expands upon it's motion to strike or compel amendment of Plaintiffs' pretrial disclosures, discussed above.  Defendant asserts that Plaintiffs have listed as expected trial exhibits in their pretrial disclosures several categories of documents and other tangible items, which Plaintiffs have not produced to Defendant.  At the pretrial conference, Plaintiffs clarified that they do not intend to offer as evidence any documents or tangible items not produced to Defendant.  To the extent that the parties resolved this motion at the pretrial conference, the Court will dismiss it as moot.

The one issue not resolved at the pretrial conference relates to the reports or testimony of Plaintiffs' unidentified experts.  Defendant represents that Plaintiffs have only identified one expert, Calvin Hoerneman, in their Rule 26(a)(2) disclosures.  However, Plaintiffs' pretrial disclosures indicate that Dr. Mark Stewart, various other unidentified medical providers of Plaintiffs, and unidentified "physicians, physical therapists, nurses, medical providers or rehabilitation specialists

who have treated or examined" Plaintiff are expected to give live testimony at trial or to have their testimony presented by deposition.

In response, Plaintiffs state that the Sixth Circuit does not require treating physicians to prepare expert reports. *See Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007) (stating that "Rule 26(a)(2)(B) does not require an expert report from a treating physician"). However, when a treating physician has not prepared an expert report, the physician is limited to fact-witness testimony regarding diagnosis and treatment. Accordingly, to the extent that Defendant's motion seeks to prevent Plaintiffs from offering into evidence expert reports or testimony that were not previously disclosed to Defendant, the Court will grant Defendant's motion.

## VI.  Defendant's Motion in Limine to Exclude Allegations not Supported by Record Evidence [Dkt. # 50]

Defendant contends that Plaintiffs generally should not be able to make allegations or statements at trial which are unsupported by the record evidence. Defendant specifically identifies the following three allegations as unsupported by the record evidence:

1.     That Defendant withheld documents or the identity of key witnesses during the discovery period;

2.     That former Bay City store coach Tom Carlson gave Plaintiff a "false rating" in connection with the January 4, 2006 workforce adjustment; and

3.     That Plaintiff was not terminated as part of Kmart's January 4, 2006, workforce adjustment.

First, with respect to Plaintiffs' allegations that Defendant was uncooperative during discovery, Plaintiffs respond to Defendant's motion by indicating that they have no intention of informing the jury of Defendant's alleged conduct. Indeed, such allegations or statements would not be admissible at trial, and the Court will deny this portion of the motion as moot.

With respect to Defendant's contention that Plaintiffs' allegations that Carlson gave Plaintiff

a "false rating" and that Plaintiff was not terminated due to the workforce reduction are unsupported by the record, the Court determined that Plaintiff had raised a genuine issue of material fact with respect to these claims when it decided Defendant's motion for summary judgment. While Defendant repeats its justifications for Carlson's rating of Plaintiff, Defendant never explained why he rated Plaintiff's observed work performance lower than he had rated it in November 2005, when Plaintiff had not worked since November 2005. Similarly, with respect to the workforce reduction, Plaintiff has advanced evidence that the workforce reduction was pretext for unlawful disability discrimination. A genuine issue of material fact remains.

Accordingly, the Court will deny Defendant's motion with respect to allegations that Carlson gave Plaintiff a "false rating" and did not terminate Plaintiff's employment as a result of a workforce reduction.

## VII.  Conclusion

Accordingly, it is **ORDERED** that Defendant's motion to strike or compel amendment of Plaintiffs' pretrial disclosures [Dkt. # 46] is **DENIED AS MOOT**. Consistent with the discussion above, the parties are **DIRECTED** to exchange and file amended pretrial disclosures, and to include estimated times for direct examination of witnesses, on or before **January 16, 2009**.

It is further **ORDERED** that Defendant's motion in limine to exclude evidence of lost wages [Dkt. # 47] is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that Defendant's motion in limine to exclude evidence of alleged gender discrimination [Dkt. # 48] is **GRANTED**.

It is further **ORDERED** that Defendant's motion in limine to exclude evidence requested in discovery that was not produced by Plaintiffs [Dkt. # 49] is **DENIED AS MOOT IN PART** and

**GRANTED IN PART**.

It is further **ORDERED** that Defendant's motion in limine to exclude allegations not supported by record evidence [Dkt. # 50] is **DENIED AS MOOT IN PART** and **DENIED IN PART**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 13, 2009

<div style="border:1px solid black">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 13, 2009.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>